J-S16035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEREMY J. HURLBURT | : | |
| | : | |
| Appellant | : | No. 1401 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 28, 2024
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000700-2023

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:           **FILED: JULY 18, 2025**

Jeremy J. Hurlburt ("Hurlburt") appeals from the judgment of sentence imposed following his convictions for simple assault and criminal trespass.[1] Additionally, Hurlburt's counsel has filed an application to withdraw and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967). After careful review, we grant counsel's application to withdraw and affirm Hurlburt's judgment of sentence.

Briefly, by way of background, the charges stemmed from an incident in which Hurlburt unlawfully entered the home of his ex-girlfriend, (the "Victim") and, over an extended period of several hours, assaulted her while brandishing a knife and strangling her in violation of a protection from abuse ("PFA") order. The Commonwealth initially charged Hurlburt with simple

---

[1] ***See*** 18 Pa.C.S.A §§ 2701(a)(1), 3503(a)(1)(i).

assault, aggravated assault, strangulation, terroristic threats, criminal trespass, and harassment.

On February 1, 2024, Hurlburt agreed to plead no contest to simple assault and criminal trespass, and the trial court granted Hurlburt's oral request to continue the scheduled plea hearing to the following day so the parties could finalize the plea terms. On February 2, before Hurlburt entered a plea, the Commonwealth amended the charges — changing simple assault to include the possession of a deadly weapon and increasing the criminal trespass charge from a summary offense to a third-degree felony.

At the time of the plea, Hurlburt executed a written plea colloquy form, and the trial court conducted a thorough oral colloquy on the record, confirming that he entered his plea knowingly, voluntarily, and intelligently. **See** N.T. (Plea Hearing), 2/2/24, at 6-13. Hurlburt agreed that the trial court could impose any term up to the statutory maximum of nine years. **See id**. at 9-10. In exchange for Hurlburt's plea, the Commonwealth agreed to dismiss all remaining charges.

The Commonwealth summarized the factual basis for Hurlburt's no contest plea as follows:

> [A]s to [simple assault, the Commonwealth would prove that on the date of the incident, Hurlburt] did have in his possession a kitchen knife and did knowingly or recklessly cause bodily injury to [the Victim], that he grabbed, punched, or slapped the [V]ictim over her body and struck her multiple times. . . . [A]s to [criminal trespass, on the date of the incident, Hurlburt] was not licensed or privileged, and yet entered and remained in the home of [the Victim], which is an occupied structure, and . . . did not leave.

*Id*. at 11. The trial court then scheduled a sentencing hearing and ordered a pre-sentence investigation ("PSI") report.

On March 28, 2024, Hurlburt appeared before the trial court for sentencing. At the time of sentencing, the offense gravity score ("OGS") for simple assault was four, three for criminal trespass, and Hurlburt's prior record score ("PRS") was two. ***See*** N.T. (Sentencing Hearing), 3/28/24, at 2; ***see also*** 204 Pa. Code § 303.15. The standard guideline range for simple assault with a deadly weapon enhancement — possessed, based on the OGS and Hurlburt's PRS, was three to twelve months, plus or minus three months for aggravating or mitigating circumstances; and restorative sanctions ("RS") to nine months for criminal trespass, plus or minus three months for aggravating or mitigating circumstances. ***See id***.; ***see also*** 204 Pa. Code §§ 303.16(a), 303.17(a).

During the hearing, the trial court heard from Hurlburt, who spoke on his own behalf that he "never had any issues like this in [his] past." N.T., 3/28/24, at 5. The Commonwealth presented testimony from the Victim, who read a written statement describing a traumatic and brutal ten-hour ordeal. ***See id***. at 3, 10-11. According to the Victim, Hurlburt essentially held her captive and physically assaulted her during this time. The trial court noted that the incident continued to affect the Victim both physically and emotionally. ***See id***.

Defense counsel requested a concurrent sentence "towards the bottom of the standard range," citing Hurlburt's: (1) age of fifty at the time of sentencing; (2) good work history; (3) prior military service; (4) lack of prior convictions for crimes of violence; and (5) lack of drug issues. *See id*. at 5. The Commonwealth argued that Hurlburt's crime had a significant impact on the Victim and asked the trial court to consider the circumstances of the case, including "the fact that [the Victim] was required to have a PFA against him. . . . [H]e did not take any responsibility for his actions. He pled no contest, which again suggests that he simply does not acknowledge the severity of this attack upon [her].". N.T., 3/28/24, at 13. The Commonwealth requested consecutive sentences. *See id*.

At the conclusion of the sentencing hearing, the trial court ordered Hurlburt to serve consecutive standard range terms of imprisonment as follows: (1) eleven months to twenty-four months for simple assault; and (2) seven months to forty-eight months for criminal trespass. In total, the trial court imposed an aggregate sentence of eighteen months to seventy-two months of incarceration.

Hurlburt filed a timely motion for post-sentence relief contending that "the sentence is too excessive and harsh" and, alternatively, seeking to withdraw his plea "because it wasn't entered knowingly[, and] further assert[ed] his innocence[.]" Post-Sentence Motion, 4/1/24, at unnumbered 1. In compliance with the trial court's order, Hurlburt filed a brief in support

of his post-sentence motion in which he "acknowledged that the sentence is in the standard range" but argued that : (1) his sentence was "too harsh" because he "has a limited criminal history [and] bears no harm or threat to the public[;]" (2) "[he] does not appear to have any current issues with drugs or alcohol either or history of violence, so a lengthy sentence does not suit any rehabilitative needs that need to be addressed[;]" (3) the trial court improperly relied on the Victim's statement at sentencing which "exaggerated the statement of the offense as provided in the plea proceeding and discovery documents[;]" (4) his plea was "not knowing, in that he was unaware that the [V]ictim would allege at sentencing that she was strangled multiple times, that he took a screwdriver to the ignition of her vehicle, and that the attack lasted [ten] hours[;]" and (5) he is, in fact, innocent, and "did not commit" the crimes to which he pled no contest. Brief in Support of Post-Sentence Motion, 7/29/24, at unnumbered 1-2. The trial court did not rule on Hurlburt's post-sentence motion within 120 days, resulting in its denial by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(a) (providing "If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law)." Hurlburt timely filed a notice of appeal. Both the trial court and Hurlburt complied with Pa.R.A.P. 1925.

In this Court, counsel filed an **Anders** brief and an application to withdraw from representation. Hurlburt did not respond to the application to withdraw. Nor has he filed a brief with this Court.

Counsel's **Anders** brief identifies the following issues for our review:

I. Was the sentence imposed on [Hurlburt] excessive in light of [his] circumstances, particularly with regards to the Victim's statements at sentencing?

II. Should the court have allowed [Hurlburt] to withdraw his *nolo contend[e]re* plea?

**Anders** Brief at 4 (unnecessary capitalization omitted).

Before we assess the substance of counsel's **Anders** brief, we must first determine whether counsel's request to withdraw meets certain procedural requirements. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). An **Anders** brief that accompanies a request to withdraw must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the **Anders** brief to the client, and a letter that advises the client of the right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems

worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (citation omitted). If counsel has satisfied these requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." **Commonwealth v. Dempster**, 187 A.3d 266, 271 (Pa. Super. 2018) (*en banc*) (quoting **Anders**, 386 U.S. at 744).

Here, in the **Anders** brief, counsel provides a procedural and factual history of the case with citations to the record, discusses the issues arguably supporting the appeal, and explains why counsel concludes those issues are frivolous. **See Anders** Brief at 4-17. Counsel mailed a copy of the **Anders** brief to Hurlburt, and in her cover letter, counsel advised him that he could raise any additional issues before this Court *pro se* or with private counsel. **See** Application to Withdraw as Counsel, 2/20/25. As counsel has substantially complied with the requirements of **Anders** and **Santiago**, we will conduct an independent review to determine whether this appeal is frivolous.

The first issue raised by counsel in the **Anders** brief concerns Hurlburt's claim that the trial court imposed an excessive sentence and improperly relied on the Victim's exaggerated statements at sentencing following his open no contest plea. This issue presents a challenge to the discretionary aspects of his sentence. Preliminarily, we note:

> Generally, a plea of guilty [or no contest] amounts to a waiver of all defects and defenses except those concerning the jurisdiction

of the court, the legality of the sentence, and the validity of the guilty plea.

*Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). Nevertheless, an appellant who enters an open plea may challenge the discretionary aspects of their sentence on appeal. *Commonwealth v. Luketic*, 162 A.3d 1149, 1159 (Pa. Super. 2017).

As this Court has explained, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence[,]" even in the *Anders*/*Santiago* context. *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015) (citations omitted). Before reaching the merits of such claims we must determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Mulkin*, 228 A.3d 913, 916 (2020).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms

which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Our review of the record indicates that Hurlburt timely filed a notice of appeal, a post-sentence motion, and a Rule 2119(f) statement preserving the issue he raises before this Court — that the trial court imposed an excessive sentence and improperly relied on the Victim's statements. Here, counsel's Rule 2119(f) statement identifies Hurlburt's claim that "[t]he sentence imposed on [Hurlburt] was excessive and placed too much weight on the Victim's testimony at sentencing." ***Anders*** Brief at 8. However, counsel ultimately concludes that Hurlburt's claim is frivolous because it does not present a substantial question for our review. ***See id***. at 11-14.

Notwithstanding counsel's assessment, we find that Hurlburt's claim does, in fact, raise a substantial question. It is well-settled that a challenge asserting the sentencing court relied on improper factors — such as overemphasis on victim impact statements — may present a substantial question for appellate review. ***See Commonwealth v. King***, 182 A.3d 449, 454 (Pa. Super. 2018). We therefore proceed to address the merits of Hurlburt's discretionary sentencing claim.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Laughman***, 314 A.3d 569, 572 (Pa. Super. 2024) (citation omitted).

When imposing a sentence, the trial court must consider whether the punishment is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). This Court may only vacate the sentence where "application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2).

Moreover, where the sentence falls within the standard guideline range and the court had the benefit of a PSI report, "we presume that the court was aware of the relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." *Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014) (citation omitted).

This Court has stated:

The admissibility of evidence, including victim impact evidence, rests with the sound discretion of the trial court. The conduct of a sentencing hearing differs from the trial of the case. To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant. While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial.

*King*, 182 A.3d at 455 (citations omitted).

"Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (internal quotations omitted).

Consecutive sentences will not be disturbed on appeal unless "the aggregate sentence is `grossly disparate' to the defendant's conduct or `viscerally appear[s] as patently unreasonable.'" ***Commonwealth v. Brown***, 249 A.3d 1206, 1212 (Pa. Super. 2021).

Counsel maintains that Hurlburt's discretionary sentence claim is frivolous because: (1) Hurlburt addressed the court at sentencing; (2) the sentencing court was entitled to consider the Victim's oral statement pursuant to 18 P.S. § 11.201(5), which provides victims the opportunity to submit impact statements detailing the physical, psychological, and economic effects of the crime; (3) the Victim's statement was only one of several factors the court considered; and (4) the court had the benefit of Hurlburt's PSI report when imposing his sentence within the standard guideline range. ***See Anders*** Brief at 11-14.

During the sentencing hearing, the trial court stated that it had the benefit of a PSI report, which included the sentencing guidelines, and Hurlburt's age, criminal, military, employment, and drug and alcohol history. ***See*** N.T., 3/28/24, at 2. Here, at the conclusion of the sentencing hearing, the trial court aptly stated its reasoning and all the factors that it considered:

> Each sentence is within the standard range and imposed for the reasons of record, including the nature and circumstances of the offense, which included an assault over an extended period of time, the brandishing of a knife, injuries to [the Victim] both short and long term, the history and character of [Hurlburt] who has otherwise lived a nonviolent life excluding the circumstances involving this particular victim who was a protected party under a PFA, the impact on the [V]ictim, the impact on the community,

the terms and conditions of the plea agreement which included the dismissal of the charge for indirect criminal contempt for an alleged PFA violation, the recommendation of the probation department, and the sentencing guidelines.

N.T., 3/28/24, at 15.

Furthermore, in its opinion, the trial court determined that Hurlburt's sentence was appropriate because:

> While it is true that strangling and the specifi[c] duration of the attack were not part of the factual basis put on the record to satisfy the elements of simple assault and criminal trespass, [Hurlburt] did acknowledge and agree to not contest that he "knowingly . . . cause [*sic*] bodily injury to [the Victim]" and "that he grabbed, punched or slapped . . . her body and struck her multiple times" at a time when he had "in his possession a kitchen knife." Further, [Hurlburt] did not contest that he "was not licensed or privileged" to enter [the Victim's] home and yet he "entered and remained . . . and . . . did not leave." Those facts were sufficient to establish the elements of criminal trespass, simple assault, and the deadly weapon possessed enhancement. . . . The legal principle . . . "that an accused may not be convicted on the basis of anything not admitted in the evidence," does not extend as far as [Hurlburt] suggests it should. The Commonwealth is only "bound by the record on the plea" to the extent the admitted facts must be adequate to support the conviction.
>
> In this case, for example, it is well understood that it would be improper for the Commonwealth to argue, or for the court to have found, on the basis of the [V]ictim's statements at sentencing, that [Hurlburt] should also be convicted of strangulation. Likewise, it would be improper for the court to sentence [Hurlburt] as if he had committed the crime of strangulation. As explained by the court at sentencing, and as stated in the sentencing order, [Hurlburt] was sentenced within the standard range for the two . . . crimes to which he pled *nolo contender*[*e*]: simple assault and criminal trespass.
>
> Further, and as the Commonwealth correctly argues, the [V]ictim of these crimes has the right at the sentencing hearing "to offer comment on the sentencing . . . to include submission of

- 12 -

a . . . victim impact statement detailing the physical, psychological, and economic effects of the crime on the victim[.]" ***See*** 18 P.S. §[ ]11.201(5). The purpose of the victim impact statement "is to personalize the crime and to illustrate the human effects of it."

Moreover, "a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." Here, despite [Hurlburt] having failed to object to any portion of the [V]ictim's statement at the time it was read, as discussed below, the court considered the [V]ictim's statement for its proper purpose, *i.e.*, "to show the victim's uniqueness as a human being and to illustrate that a particular individual's loss has a distinct effect[.]" ***See King***, [182 A.3d at 455].

At the sentencing hearing, after the [V]ictim took the stand but before the victim made any statement, the court "remind[ed]" her that "we are past the guilt phase." This recognition supports the fact that [Hurlburt] was sentenced only on the crimes for which he was convicted, not on the [V]ictim's testimony that [Hurlburt] strangled her. Thus, even if, as [Hurlburt] contends, the [V]ictim's statement went beyond the impact she suffered as a result of the specific crimes for which [Hurlburt] was convicted, the court differentiated the relevant information from that which [Hurlburt] claims was exaggerated. . . .

In sum, the reasons for the sentence were proper, recited on the record, and included in the sentencing order. It is worth noting that the court specifically acknowledged at the sentencing hearing that [Hurlburt's] criminal history did not reveal any prior violent crimes, but that [Hurlburt] was previously incarcerated in connection with his conduct that resulted in the [V]ictim becoming a protected party under a [PFA] order. Similarly, the sentencing order stated that [Hurlburt] "has otherwise lived a nonviolent life excluding the circumstances involving this particular victim who was a protected party under a PFA[.]"

Trial Court Opinion, 12/10/24, at 5-9 (unnecessary capitalization and some citations omitted).

Following our review of the record and applicable law, we conclude that the trial court: (1) properly exercised its discretion in sentencing Hurlburt within the standard guideline ranges; and (2) properly considered all relevant statutory and factual factors, including the victim impact statement. Hurlburt entered a no contest plea without a negotiated sentence, leaving the trial court free to impose any lawful sentence up to the statutory maximum of nine years. As explained above, Hurlburt's aggregate sentence of eighteen months to seventy-two months in a state correctional institution, fell within the standard range of the sentencing guidelines. The record further reflects that the trial court had the benefit of a PSI, considered all relevant statutory sentencing factors, articulated its reasoning on the record, and gave appropriate weight to the Victim's statement under 18 P.S. § 11.201(5) in support of the sentence imposed. **See Prisk**, 13 A.3d at 533; **see also King**, 182 A.3d at 455; **Seagraves**, 103 A.3d at 842. Thus, Hurlburt's consecutive sentence as aggregated is not "'grossly disparate' to his conduct, nor does it 'viscerally appear as patently unreasonable.'" **Brown**, 249 A.3d at 1212. Accordingly, based on our independent review of the record, we conclude that Hurlburt's discretionary sentencing challenge is wholly frivolous.

The second issue counsel identifies in the **Anders** brief challenges the trial court's denial of Hurlburt's post-sentence motion to withdraw his no contest plea. At the outset, we note that "in terms of its effect upon a case, a plea of *nolo contendere* is treated the same as a guilty plea."

- 14 -

*Commonwealth v. V.G.*, 9 A.3d 222, 226 (Pa. Super. 2010) (citation omitted).

This Court reviews the denial of a post-sentence motion to withdraw a guilty plea by the following standard.

It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court. Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he must demonstrate prejudice on the order of manifest injustice. [A] defendant may withdraw his guilty plea after sentencing only where necessary to correct manifest injustice. Thus, post-sentence motions for withdrawal are subject to higher scrutiny since the courts strive to discourage the entry of guilty pleas as sentence-testing devices.

Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

*Commonwealth v. Hart*, 174 A.3d 660, 664–65 (Pa. Super. 2017) (internal citations and quotation marks omitted).

Additionally, "a defendant is bound by the statements which he makes during his plea colloquy." *Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Super. 1996) (citations omitted). Therefore, a defendant "may not assert grounds for withdrawing the plea that contradict statements made when he pled guilty," and he may not recant the representations he made in court when he entered his guilty plea. *Id*. (citation omitted). Moreover, the law does not

require that a defendant be pleased with the outcome of his decision to plead guilty. **See Commonwealth v. Moser**, 921 A.2d 526, 529 (Pa. Super. 2007). The law requires only that a defendant's decision to plead guilty be made knowingly, voluntarily, and intelligently. **See id**.

Counsel concludes that Hurlburt's claim that: (1) "he did not enter his plea knowingly because he did not know that the [V]ictim would allege at sentencing that he ruined her ignition, strangled her multiple times, and that the incident lasted many hours[;]" and (2) he "vehemently assert[s] his innocence" does not establish manifest injustice; thus, it is "meritless and frivolous." **Anders** Brief at 15-16.

In its opinion, the trial court determined that Hurlburt entered his plea knowingly:

> . . . Not only did [Hurlburt] complete a written plea colloquy with his attorney prior to the plea proceeding, but the court conducted a thorough oral colloquy to ensure [Hurlburt's] plea was knowing, voluntary, and intelligent. Indeed, the plea hearing was scheduled the day prior, but continued one . . . day at [Hurlburt's] request to provide additional time to finalize the details.

Trial Court Opinion, 12/10/24, at 10-11 (unnecessary capitalization omitted).

After thoroughly reviewing the record with respect to Hurlburt's challenge to his *nolo contendere* plea, we conclude that the trial court did not abuse its discretion in denying his motion to withdraw the plea. Viewing the totality of the circumstances surrounding his entry of the plea discloses that he fully understood the nature and consequences of his plea, and that he entered the plea knowingly, intelligently, and voluntarily.

Here, the record belies Hurlburt's claim. He was subject to both written and oral colloquies and affirmed that he understood the plea terms, the possible sentence, and the rights he was waiving. That he later disagreed with the Victim's sentencing statement or expressed regret about his decision to enter a plea does not render the plea unknowing. *See Barnes*, 687 A.2d at 1167; *see also Moser*, 921 A.2d at 529. Accordingly, the trial court appropriately found no manifest injustice warranting withdrawal of the plea.

Lastly, our independent review of the record reveals no non-frivolous issues to be raised on appeal. *See Commonwealth v. Yorgey*, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*). Accordingly, we grant counsel's application to withdraw and affirm the judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/18/2025